No. 20-16589

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

KATRINA SCHALLER, by and through her legal guardians KIMBERLY A. FEGURGUR and JOHN A. FEGURGUR,

Plaintiff-Appellee,

v.

U.S. SOCIAL SECURITY ADMINISTRATION, et al.

Defendants-Appellants.

On Appeal from the United States District Court for the District of Guam

## OPENING BRIEF FOR APPELLANT


JEFFREY BOSSERT CLARK
*Acting Assistant Attorney General*

SHAWN N. ANDERSON
*United States Attorney*

ABBY C. WRIGHT
LAURA E. MYRON
*Attorneys, Appellate Staff*
*Civil Division, Room 7228*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4819*

## TABLE OF CONTENTS

**Page**


STATEMENT OF JURISDICTION .................... 1

STATEMENT OF THE ISSUE .................... 1

STATEMENT OF THE CASE .................... 1

A. Statutory Background .................... 1

B. Prior Challenges to the Exclusion of Residents of Territories from Federal Welfare Benefits Legislation .................... 3

C. Factual Background and Prior Proceedings .................... 5

SUMMARY OF ARGUMENT .................... 8

STANDARD OF REVIEW .................... 11

ARGUMENT:

CONGRESS'S DECISION TO EXCLUDE RESIDENTS OF GUAM FROM THE SSI PROGRAM DOES NOT VIOLATE THE CONSTITUTION .................... 12

A. Under Binding Precedent from the Supreme Court and this Court, the Challenged Provision of the Social Security Act Is Constitutional .................... 12

B. The District Court Erroneously Rejected at Least Three Rationales that Provide the Necessary Rational Basis for Congress's Exclusion of Guam Residents from the SSI Program .................... 15

1. The Unique Tax Status of Guam Provides a Rational Basis for the Challenged Statute .................... 16

2. The Cost of Extending SSI Benefits to Residents Provides a Rational Basis for the Exclusion of Guam Residents .................... 21

3. Congress Could Rationally Exclude Residents of Guam from the SSI Program Based on Concerns About the Economic Impact of Extending Benefits .................... 24

CONCLUSION .......................................................................................................... 29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*American Fed'n of Labor v. American Sash & Door Co.*,
335 U.S. 538 (1949) .......... 20

*Bank of Guam v. United States*,
578 F.3d 1318 (Fed. Cir. 2009) .......... 9, 17

*Besinga v. United States*,
14 F.3d 1356 (9th Cir. 1994) .......... 9, 11, 13, 14, 15, 16, 19, 24, 26, 28

*Bolling v. Sharpe*,
347 U.S. 497 (1954) .......... 15

*Burlington N. R.R. Co. v. Department of Pub. Serv. Regulation*,
763 F.2d 1106 (9th Cir. 1985) .......... 26, 27

*Califano v. Gautier Torres*,
435 U.S. 1 (1978) .......... 3, 4, 7, 9, 12, 13, 14, 15, 17, 22, 23, 24, 25, 28

*Chastleton Corp. v. Sinclair*,
264 U.S. 543 (1924) .......... 27

*Crawford v. Antonio B. Won Pat Int'l Airport Auth.*,
917 F.3d 1081 (9th Cir. 2019) .......... 11, 26

*Dandridge v. Williams,*
397 U.S. 471 (1970) .......... 10, 16, 18

*FCC v. Beach Commc'ns, Inc.*,
508 U.S. 307 (1993) .......... 11, 15, 16, 25

*Gallinger v. Becerra*,
898 F.3d 1012 (9th Cir. 2018) .......... 20

*Harris v. Rosario*,
446 U.S. 651 (1980) .......... 4, 7, 9, 12, 13, 14, 15, 16, 24, 25, 28

*Heckler v. Ringer*,
466 U.S. 602 (1984) .......... 6

*Johnson v. Robison*,
415 U.S. 361 (1974) .......... 19

*Leary v. United States*,
395 U.S. 6 (1969) .......... 27

*Lindsley v. Natural Carbonic Gas Co.*,
220 U.S. 61 (1911) .......... 27

*Lyng v. International Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW*,
485 U.S. 360 (1988) .......... 10, 22

*Massachusetts Bd. of Ret. v. Murgia*,
427 U.S. 307 (1976) .......... 15

*NLRB v. Jones & Laughlin Steel Corp.*,
301 U.S. 1 (1937) .......... 21

*Roley v. Pierce Cty. Fire Prot. Dist. No. 4*,
869 F.2d 491 (9th Cir. 1989) .......... 27

*Sandoval v. County of Sonoma*,
912 F.3d 509 (9th Cir. 2018) .......... 11

*Schaller v. U.S. SSA*,
No. 18-cv-1625, 2020 WL 956422 (W.D. Pa. Feb. 27, 2020) .......... 6

*Tuaua v. United States*,
788 F.3d 300 (D.C. Cir. 2015) .......... 19

*United States v. Vaello-Madero*,
956 F.3d 12 (1st Cir. 2020) .......... 4-5, 7

*Vance v. Bradley*,
440 U.S. 93 (1979) .......... 20

*Williamson v. Lee Optical of Okla., Inc.*,
348 U.S. 483 (1955) ........ 20

**U.S. Constitution:**

Art. IV, § 3, cl. 2 ........ 4, 12

**Statutes:**

Food Stamp Act Amendment of 1970,
Pub. L. No. 91-671, 84 Stat. 2048 (1971) ........ 20

7 U.S.C. § 2014 ........ 19, 20

8 U.S.C. § 1408 ........ 19

26 U.S.C. § 881 ........ 17

26 U.S.C. § 882 ........ 17

26 U.S.C. § 933 ........ 17

28 U.S.C. § 1291 ........ 1

28 U.S.C. § 1331 ........ 1

28 U.S.C. § 2107(b) ........ 1

42 U.S.C. §§ 301-306 ........ 2

42 U.S.C. § 401 *et seq.* ........ 1

42 U.S.C. § 405(g) ........ 1, 6

42 U.S.C. § 602 ........ 18

42 U.S.C. § 619 ........ 18

42 U.S.C. §§ 1201-1206 ........ 2

42 U.S.C. §§ 1351-1355 ........ 2

42 U.S.C. § 1381 *et seq.* ..... 5

42 U.S.C. § 1381 ..... 3

42 U.S.C. § 1381 note ..... 2, 3

42 U.S.C. § 1381a ..... 3

42 U.S.C. § 1382 ..... 1

42 U.S.C. § 1382(f) ..... 2

42 U.S.C. § 1382 note ..... 3

42 U.S.C. § 1382c(a)(1) ..... 2

42 U.S.C. § 1382c(e) ..... 2

42 U.S.C. § 1383(c)(3) ..... 1

42 U.S.C. § 1383 note ..... 3

42 U.S.C. § 1384 note ..... 3

42 U.S.C. § 1385 note ..... 3

48 U.S.C. § 734 ..... 18

48 U.S.C. § 1421i(a) ..... 17

48 U.S.C. § 1421i(d) ..... 9, 17

48 U.S.C. § 1421i(e) ..... 9, 17

**Regulation:**

20 C.F.R. § 416.1327(a) ..... 2

**Legislative Materials:**

Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, H.R.J. Res. 549, Pub. L. No. 94-241, 90 Stat. 263 (1976) (codified at 48 U.S.C. § 1801)........................................................................... 2
§§ 501-505, 90 Stat. at 267-69 (Art. V)..................................................... 20
§ 502(a)(1), 90 Stat. at 268.........................................................................2, 20

Guam Res. 42-32, 32nd Leg. (2013), www.guamlegislature.com/COR_Res_32nd/Adopted/R042-32%20(LS).pdf........ 23

**Other Authorities:**

Gary Burtless & Orlando Sotomayor, *Labor Supply and Public Transfers, in The Economy of Puerto Rico: Restoring Growth* (Susan M. Collins et al. eds., 2006)..................................................................... 25

Jurisdictional Statement, *Califano v. Gautier Torres*, No. 77-88, 1977 WL 204941 (U.S. July 14, 1977).................................................................................................... 21

*CPI Inflation Calculator*, https://data.bls.gov/cgi-bin/cpicalc.pl (last visited Dec. 28, 2020)........................................................................... 22

Gen. Accounting Office, GAO/HRD-87-60, *Welfare and Taxes: Extending Benefits and Taxes to Puerto Rico, Virgin Islands, Guam, and American Samoa* (1987), https://go.usa.gov/xAbtF ............................................ 22,

SSA Memorandum from Michael Stephens, Supervisory Actuary, to Steve Goss, Chief Actuary, *Estimated Change in Federal SSI Program Cost for Potential Extension of SSI Eligibility to Residents of Certain U.S. Territories* (Jun. 11, 2020), https://go.usa.gov/xA2yM ............................................. 24

The World Bank, *Population growth (annual %)* (2020), https://data.worldbank.org/indicator/SP.POP.GROW?end=2017&start=1987 ................................................................................ 22

U.S. Census Bureau, *2010 Census Population and Housing Tables (CPH-Ts): Population, Housing Units, Land Area, and Density for U.S. Island Areas: 2010 (CPH-T-8)* (Oct. 28, 2013) https://go.usa.gov/xAbtS ......................... 23-24, 26

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. § 1331. As the district court recognized, the proper basis for jurisdiction was 42 U.S.C. § 405(g). ER 9. *See also* 42 U.S.C. §§ 405(g); 1383(c)(3). On June 19, 2020, the district court entered final judgment for plaintiff. The government filed a timely notice of appeal on August 18, 2020. *See* 28 U.S.C. § 2107(b). This court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

The issue before this Court is whether excluding residents of Guam from the Supplemental Security Income program violates the equal protection principles of the U.S. Constitution.

## STATEMENT OF THE CASE

### A. Statutory Background

The Social Security Administration (SSA) provides benefits to aged persons and persons with disabilities under two primary programs. Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*., provides for benefits to insured workers and their families at retirement or death, or in the event of disability. The Supplemental Security Income (SSI) program provides benefits for aged and blind persons, and persons with disabilities, who meet certain income and resource requirements. *See* 42 U.S.C. § 1382. Unlike other parts of Social Security and Medicare, SSI is not an insurance program; individuals do not contribute directly to the SSI program through payroll taxes.

Congress has provided that to be eligible for SSI payments, an individual must be "a resident of the United States" or "a child who is a citizen of the United States . . . living with a parent of the child who is a member of the Armed Forces of the United States assigned to permanent duty ashore outside the United States." 42 U.S.C. § 1382c(a)(1). In addition, no individual is eligible for SSI benefits "for any month during all of which such individual is outside the United States." *Id.* § 1382(f). For purposes of the statute, Congress defined "United States" as "the 50 States and the District of Columbia." *Id.* § 1382c(e). As a result, residents of the U.S. Territories of Puerto Rico, Guam, American Samoa, and the U.S. Virgin Islands are not eligible for SSI payments, nor is any SSI recipient who spends 30 consecutive days or more in one of those Territories. *See* 20 C.F.R. § 416.1327(a). In 1976, attendant to the covenant to establish the Commonwealth of the Northern Mariana Islands (CNMI) as a Territory of the United States, Congress separately extended the SSI program to residents of those islands. *See* Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, H.R.J. Res. 549, Pub. L. No. 94-241, § 502(a)(1), 90 Stat. 263, 268 (1976) (codified at 48 U.S.C. § 1801) (Covenant).

Congress provides federal assistance to needy aged, blind, and disabled individuals in Guam, Puerto Rico, and the U.S. Virgin Islands through different programs under the Social Security Act. *See* 42 U.S.C. §§ 301-306, 1201-1206, 1351-1355, 1381 note. Those programs provide more local control but less federal funding

than SSI. Under SSI, the federal government sets eligibility criteria, determines the amount of the federal benefits, and pays the full amount of those benefits and the associated administrative costs. *Id.* §§ 1381, 1381a. Under the territorial programs, by contrast, the territorial governments set their own income and resource limits and determine their own benefit amounts, while the federal government pays 75% of the benefits and 50% of the administrative costs up to a statutory cap. *Id.* §§ 1381 note, 1382 note, 1383 note, 1384 note, 1385 note.

### B. Prior Challenges to the Exclusion of Residents of Territories from Federal Welfare Benefits Legislation

During the 1970s, residents of Territories challenged their exclusion from federal welfare benefits legislation. The plaintiffs in *Califano v. Gautier Torres*, 435 U.S. 1 (1978) (per curiam), challenged the exclusion of Puerto Rico residents from the SSI program, claiming it violated their constitutional right to travel. A three-judge district court determined that the exclusion of Puerto Rico from SSI violated the Constitution, but the Supreme Court summarily reversed. *Id.* at 2-3, 5. The Court held that "a law providing for governmental payments of monetary benefits . . . 'is entitled to a strong presumption of constitutionality'" and that "[s]o long as its judgments are rational, and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional straitjacket." *Id.* at 5. The Court went on to explain that "[a]t least three reasons have been advanced to explain the exclusion of persons in Puerto Rico from the SSI program": (1) "because of the unique tax status of Puerto

Rico, its residents do not contribute to the public treasury"; (2) "the cost of including Puerto Rico would be extremely great"; and (3) "inclusion in the SSI program might seriously disrupt the Puerto Rican economy." *Id.* at 5 n.7. The Court thus found the statutory exclusion rational and therefore constitutional.

Two years later, in *Harris v. Rosario*, 446 U.S. 651 (1980) (per curiam), the Supreme Court again summarily reversed a decision in which a district court had held unconstitutional another federal benefits program—Aid to Families with Dependent Children—that treated Puerto Rico differently from the States and the District of Columbia. The Court rejected the claim that the exclusion of Puerto Rico violated "the Fifth Amendment's equal protection guarantee," explaining that, under the Territory Clause of the Constitution, U.S. Const. art. IV, § 3, cl. 2, Congress "may treat Puerto Rico differently from States so long as there is a rational basis for its actions." *Rosario*, 446 U.S. at 651-52. The Court noted that, in *Gautier Torres*, it had "concluded that a similar statutory classification was rationally grounded on three factors" and observed that the "same considerations" supported the exclusion of Puerto Rico from Aid to Families with Dependent Children. *Id.* at 652.

In a 2017 suit, the government sought restitution in the U.S. District Court for the District of Puerto Rico of SSI benefits that it had incorrectly paid to an individual living in Puerto Rico from August 2013 to August 2016. In response, the defendant alleged that the exclusion of Puerto Rico residents from the SSI program violated the equal protection principles of the U.S. Constitution. The First Circuit agreed, *see United*

*States v. Vaello-Madero*, 956 F.3d 12 (1st Cir. 2020), and the government has filed a petition for writ of certiorari seeking review of that decision, *see United States v. Vaello-Madero*, No. 20-303 (U.S. Sept. 4, 2020).

**C. Factual Background and Prior Proceedings**

1. Plaintiff Katrina Schaller is a resident of Guam who suffers from a degenerative genetic disorder affecting muscle function and mental processing. ER 32 (¶ 5). Plaintiff was previously a resident of Pennsylvania. On August 28, 2001, she applied for SSI benefits and began receiving those benefits after the Social Security Administration found she was disabled. ER 5-6; *see also* 42 U.S.C. § 1381 *et seq*. In October 2007, following her mother's death, plaintiff moved to Guam temporarily to live with her sister Kim and Kim's husband John Fegurgur, who serve as plaintiff's legal guardians. ER 6. Before leaving for Guam, plaintiff visited the SSA office in Washington, Pennsylvania "to inquire if it was still possible for the Plaintiff to receive SSI coverage in Guam." ER 6; *see also* ER 26 (Decl. K. Fegurgur ¶ 7). SSA informed plaintiff that if she remained in Guam for more than 30 consecutive days, her benefits would be suspended. ER 6. Plaintiff remained in Guam for more than 30 days, and SSA ceased paying her SSI benefits. In 2008, she returned to Pennsylvania, and her SSI benefits resumed. *Id.* Later in 2008, however, plaintiff moved to Guam permanently, and her benefits were terminated. *Id.*

Plaintiff has an identical twin sister, who also suffers from the same genetic condition. ER 6. Plaintiff's sister lives in Pennsylvania and thus has continued to receive SSI benefits. ER 31-32 (¶ 5).[1]

2. On December 6, 2018, plaintiff's legal guardians filed suit on her behalf in the U.S. District Court for the District of Guam. ER 26-27 (¶ 12); ER 28. The Complaint challenges the exclusion of Guam residents from the SSI program under the Fifth and Fourteenth Amendments of the U.S. Constitution and the Organic Act of Guam. ER 28-51.

On June 19, 2020, the district court granted summary judgment for plaintiff and denied the government's motions to dismiss for lack of subject matter jurisdiction and for summary judgment.[2] The court concluded that the exclusion of Guam residents from the SSI program violated the equal protection principles enshrined in the U.S. Constitution because there was no rational basis for the exclusion when benefits had

---

[1] Plaintiff's sister brought a similar suit in the U.S. District Court for the Western District of Pennsylvania, even though she continues to receive SSI benefits. *See Schaller v. U.S. SSA*, No. 18-cv-1625 (W.D. Pa. Feb. 27, 2020). The district court in that case dismissed the suit for lack of subject matter jurisdiction on the ground that the plaintiff had failed to present a concrete claim for benefits to the Social Security Administration as required by 42 U.S.C. § 405(g), (h). *See Schaller*, No. 18-cv-1625, 2020 WL 956422. Plaintiff appealed, and the suit is now pending before the Third Circuit. *See Schaller v. SSA*, No. 20-1876 (3d Cir. Apr. 27, 2020).

[2] Because plaintiff's claims, which relate to eligibility for SSI benefits, arise under the Social Security Act, the government sought to dismiss plaintiff's suit for failure to present a claim for benefits to the Social Security Administration, as required by 42 U.S.C. § 405(g). *See* ER 7g; *see also Heckler v. Ringer*, 466 U.S. 602, 615, 620 (1984). The district court concluded that plaintiff had adequately presented her claim to the agency when she notified them of her move to Guam and her benefits were terminated. ER 9.

been extended to residents of the CNMI. The court disregarded the government's reliance on *Califano v. Gautier Torres*, 435 U.S. 1 (1978) (per curiam) and *Harris v. Rosario*, 446 U.S. 651 (1980) (per curiam), explaining its view that the cases were "factually distinguishable from Plaintiff's claims, such that [the] court can not conclude—at least at the motion to dismiss stage—that these cases *require* dismissal." ER 12.

Having concluded that neither *Gautier Torres* nor *Rosario* controlled the outcome of the case, the district court then considered and rejected the rationales the government offered for the exclusion of Guam residents from the SSI program. First, the court reasoned that the tax status of Guam "might explain why it is treated differently from the fifty States and the District of Columbia, [but] it does not justify the distinction in treatment between Guam and the CNMI" because CNMI residents also do not pay federal income taxes. ER 14. Second, even setting aside the comparison with the CNMI, the court reasoned that tax status could not provide a rational basis for the statute because individual benefits determinations are not connected to tax contributions. *Id.* (citing *Vaello-Madero*, 956 F.3d at 26-27).

The district court also rejected the government's asserted cost-savings rationale, noting that the annual spending for SSI benefits in 2017 was $54.5 billion and that based on numbers submitted by the government, the court estimated a spending increase of between $17 and $175 million if benefits were extended to residents of Guam. The

court determined that this budget increase was not sufficient, in its view, to justify the exclusion. ER 16.[3]

Finally, the court concluded that the possibility of economic disruption could not provide a rational basis for the statute. ER 16-20. As an initial matter, the court reasoned that it could take into account whether circumstances have changed such that even if economic disruption was a rational basis at time the statute was enacted, it could no longer form a rational basis for its continued enforcement. ER 18. The court noted that the 1976 report cited by Supreme Court in *Gautier Torres* to support the idea of economic disruption, specifically recommended that the government "initiate steps to plan for the extension of the SSI program" to Guam and the Virgin Islands. *Id.* Moreover, relying on its conclusion that the payment of benefits to the CNMI has not disrupted its economy, the court determined that there is "no relevant difference between Guam and the CNMI that would rationally justify the denial of SSI benefits to otherwise eligible U.S. citizens residing in Guam." ER 23.

## SUMMARY OF ARGUMENT

The provision of the Social Security Act excluding Guam residents from the SSI program is constitutional. The Supreme Court established over forty years ago that the unique tax status of the Territories, the cost of extending benefits, and the potential

[3] The district court calculated this number by using the average monthly SSI benefits payment amount for CNMI residents and an estimate from the Guam Legislature that approximately 24,000 residents of Guam would be eligible for SSI if benefits were extended to the Territory. ER 15.

detrimental impact on the economy of the Territories provide rational bases for the differential treatment of territorial residents with respect to the SSI program. *See Califano v. Gautier Torres*, 435 U.S. 1, 4-5 (1978) (per curiam); *Harris v. Rosario*, 446 U.S. 651, 652 (1980) (per curiam). This Court has reaffirmed the general principle articulated in those cases that Congress "may treat [Territories] differently from States so long as there is a rational basis." *Besinga v. United States*, 14 F.3d 1356, 1360 (9th Cir. 1994) (alteration in original; quotation marks omitted).

Ignoring entirely the teachings of *Gautier Torres, Rosario,* and *Besinga*, the district court erroneously rejected at least three rational bases that support the exclusion of Guam residents from the SSI program. In so doing, the district court declared unconstitutional a decades-old provision of the Social Security Act under rational-basis review. This Court should reverse the district court's decision.

*First,* as in Puerto Rico, residents of Guam do not pay federal income taxes. Instead, they pay the Guam Territorial Income Tax (GTIT), which is collected and disbursed by Guam, not the U.S. Treasury. *See Bank of Guam v. United States*, 578 F.3d 1318, 1321 (Fed. Cir. 2009); *see also* 48 U.S.C. § 1421i(d), (e). Because Guam residents do not pay into the general revenues that fund the SSI program, Congress could rationally have limited benefits to exclude them.

Notwithstanding the fact that the Supreme Court approved this rationale in *Gautier Torres* and *Rosario*, the district court dismissed the relevance of Guam residents' tax status on the ground that SSI beneficiaries, because of their income level, generally

do not pay federal income taxes. But under rational-basis review, Congress can make "rough accommodations." *Dandridge v. Williams,* 397 U.S. 471, 485 (1970). It is rational for Congress to focus on the tax status of the entire Territory rather than on that of potential beneficiaries. And the district court acknowledged that Guam's tax status could "explain why it is treated differently from the fifty States and the District of Columbia." ER 14. Nor does Congress's extension of benefits to residents of the CNMI lead to a different result. Unlike any other Territory, the CNMI entered the United States voluntarily, and on terms negotiated and set forth in the Covenant through which the CNMI secured the extension of the SSI program to its residents. And unlike the residents of Guam, its residents are not eligible for Supplemental Nutrition Assistance Program (SNAP) benefits or Medicare subsidies.

*Second*, the cost of including Guam residents in the SSI program is a rational basis for Congress's decision to limit the SSI program to residents of the fifty states, the District of Columbia, and the CNMI. As the Supreme Court has explained, judicial "review of distinctions that Congress draws in order to make allocations from a finite pool of resources must be deferential, for the discretion about how best to spend money to improve the general welfare is lodged in Congress rather than the courts." *Lyng v. International Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW*, 485 U.S. 360, 373 (1988). The district court, substituting its judgment for that of Congress, determined that the amount of money involved was not sufficiently significant. ER 15-16. This was error: the Supreme Court has never required costs to meet a certain

threshold in order to qualify as a sufficient justification to withstand rational-basis review.

*Finally*, Congress could have rationally concluded that an increase in Guam's money supply resulting from the extension of SSI benefits could have resulted in "appreciable inflationary pressure." *Besinga*, 14 F.3d at 1362. The district court erred in rejecting this rationale based on its analysis of empirical evidence amassed since the enactment of the legislation. Under rational-basis review, however, the question is whether "there is any reasonably conceivable state of facts that could provide a rational basis for the classification"—not whether the classification is wise in light of a court's analysis of current economic conditions. *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). "[T]he inquiry is not whether the challenged action *actually* furthered a legitimate interest; it is enough that the governing body *could have rationally decided* that the action would further that interest." *Crawford v. Antonio B. Won Pat Int'l Airport Auth.*, 917 F.3d 1081, 1095 (9th Cir. 2019) (alteration and quotation marks omitted).

## STANDARD OF REVIEW

This Court reviews the district court's grant of summary judgment de novo. *See Sandoval v. County of Sonoma*, 912 F.3d 509, 515 (9th Cir. 2018).

## ARGUMENT

## CONGRESS'S DECISION TO EXCLUDE RESIDENTS OF GUAM FROM THE SSI PROGRAM DOES NOT VIOLATE THE CONSTITUTION.

### A. Under Binding Precedent from the Supreme Court and This Court, the Challenged Provision of the Social Security Act Is Constitutional.

1. The Supreme Court established over forty years ago, in *Califano v. Gautier Torres*, 435 U.S. 1 (1978) (per curiam), that Congress's decision to exclude residents of Puerto Rico from the SSI program withstood rational-basis review. *Id.* at 2-3, 5. The Court explained that "[a]t least three reasons have been advanced to explain the exclusion of persons in Puerto Rico from the SSI program": (1) "because of the unique tax status of Puerto Rico, its residents do not contribute to the public treasury"; (2) "the cost of including Puerto Rico would be extremely great"; and (3) "inclusion in the SSI program might seriously disrupt the Puerto Rican economy." *Id.* at 5 n.7. The Court found that any of these reasons would suffice under rational-basis review and held that the statutory exclusion is constitutional. Two years later, the Supreme Court likewise rejected an equal protection challenge to the differential treatment of territorial residents under the Aid to Families with Dependent Children program. *See Harris v. Rosario*, 446 U.S. 651, 651 (1980) (per curiam). The Court rejected the claim that the exclusion of Puerto Rico violated "the Fifth Amendment's equal protection guarantee," explaining that, under the Territory Clause of the Constitution, U.S. Const. art. IV, § 3, cl. 2, Congress "may treat Puerto Rico differently from States so long as there is a

rational basis for its actions." 446 U.S. at 651-52. The Court noted that, in *Gautier Torres*, it had "concluded that a similar statutory classification was rationally grounded on three factors" and observed that the "same considerations" supported the exclusion of Puerto Rico from Aid to Families with Dependent Children. *Id.* at 652.

Although the *Gautier Torres* and *Rosario* cases concerned the exclusion of Puerto Rico from federal benefits programs, this Court has recognized the more general principle articulated in those cases that Congress "may treat [Territories] differently from States so long as there is a rational basis." *Besinga v. United States*, 14 F.3d 1356, 1360 (9th Cir. 1994) (alteration in original) (first quoting *Rosario*, 446 U.S. at 651; and then citing *Gautier Torres*, 435 U.S. at 5). In *Besinga*, this Court considered a veterans' benefits statute and the exclusion of individuals who had served in the Philippine Commonwealth Army in World War II when the Philippines was a Territory of the United States. Rejecting a constitutional challenge to that exclusion, this Court explained that "Congress could have rationally chosen to award a different package of benefits to Commonwealth Army servicemen than that awarded United States Army or other territorial military groupings." *Id.* at 1361. This Court noted that the "three factors [the Supreme Court relied on] in determining that the denial of SSI benefits to Puerto Rican residents satisfied the rational basis inquiry" were "present" and "dispositive" with regard to the veterans' claims and that "[u]nder the rational basis standard of review," a court does not "second-guess Congress' motivations." *Id.* at 1361-62. So too here, this Court should hold that these factors are "dispositive," *id.*, with respect to

Congress's decision to treat residents of Guam differently from residents of the fifty States with respect to the SSI program.

2. The district court erroneously distinguished these binding cases on the ground that they were factually distinct from plaintiff's case. *See* ER 12. Although *Gautier Torres* involved the right to travel rather than equal protection, the Court in *Gautier Torres* applied rational-basis review, *see* 435 U.S. at 5, and the Court in *Rosario* affirmed that the same standard of review governs an equal-protection challenge, *see* 446 U.S. at 652. The district court identified no sound reason to believe that the exclusion of territorial residents from SSI could satisfy rational-basis review for purposes of the right to travel, yet fail the same test for purposes of equal protection.

Similarly failing to distinguish applicable, binding precedent, the district court observed that *Rosario* involved block grants to state and territorial governments under the Aid to Families with Dependent Children program rather than direct aid to individual recipients under SSI. *See* ER 12. The court failed to explain, however, how that distinction could make any difference under equal protection principles. In any event, the Supreme Court in *Rosario* explicitly described the statutory classifications in the Aid to Families with Dependent Children and SSI as "similar" and explicitly stated that the "same considerations" applied to Puerto Rico's exclusion from both. 446 U.S. at 652.

Finally, the district court did not articulate any basis to distinguish the general principles articulated by this Court in *Besinga*. The three rationales accepted by the

Supreme Court in both *Gautier Torres* and *Rosario* and by this Court in *Besinga* should be considered "dispositive" with regard to the exclusion of Guam from the SSI program, just as they were in *Besinga*. 14 F.3d at 1362. The district court's failure to heed the teachings of the Supreme Court and this Court in rejecting similar challenges provides sufficient basis to reverse its judgment here.

### B. The District Court Erroneously Rejected at Least Three Rationales that Provide the Necessary Rational Basis for Congress's Exclusion of Guam Residents from the SSI Program.

Even assuming the district court was not bound by the holdings of *Gautier Torres, Rosario*, and *Besinga*, its conclusion that the challenged provision of the Social Security Act violates equal protection principles is error.

The Due Process Clause of the Fifth Amendment prohibits Congress from denying any person the equal protection of the laws. *See Bolling v. Sharpe*, 347 U.S. 497, 500 (1954). This Court has explained that Congress "may treat [Territories] differently from States" for purposes of a welfare program without violating equal protection principles "so long as there is a rational basis" for the distinction. *Besinga*, 14 F.3d at 1360 (alteration in original) (quoting *Rosario*, 446 U.S. at 651-52). A legislative classification complies with that standard if it is "rationally related to furthering a legitimate state interest." *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

A legislative classification enjoys a "strong presumption of validity," and the challenger bears the burden of "negat[ing] every conceivable basis which might support it." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314-15 (1993) (quotation marks omitted).

It is a fundamental tenet of equal protection law that "[i]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is *any reasonably conceivable state of facts* that could provide a rational basis for the classification." *Id.* at 313 (emphasis added). The application of that standard is particularly deferential in "the area of economics and social welfare." *Dandridge v. Williams,* 397 U.S. 471, 485 (1970). A classification relating to the "administration of public welfare assistance" does not violate the Constitution simply because it is "imperfect," "is not made with mathematical nicety," or "in practice it results in some inequality." *Id.* (quotation marks omitted).

The district court erred in rejecting the government's invocation of three rational bases: Guam's unique tax status, the cost of extending benefits, and the potential for economic disruption. As this Court explained in *Besinga*, "[n]othing in [*Gautier Torres* or *Rosario*] suggests that a challenged statute must satisfy all, or a majority, of the three *Torres* factors." 14 F.3d at 1363. Acceptance of any one of the three rationales described below would lead to judgment in the government's favor.

**1. The Unique Tax Status of Guam Provides a Rational Basis for the Challenged Statute.**

As the Supreme Court has recognized, residents of Territories generally "do not contribute to the federal treasury." *Rosario*, 446 U.S. at 652. As in Puerto Rico, individuals who reside in Guam generally pay no federal income tax. "[T]he [Guam

Territorial Income Tax (GTIT)] acts as a U.S. federal income tax for those living in Guam, who would otherwise not have to pay U.S. federal income tax." *Bank of Guam v. United States*, 578 F.3d 1318, 1321 (Fed. Cir. 2009); *see also* 48 U.S.C. §§ 1421i(d), (e). "[T]he GTIT is collected and disbursed by Guam, instead of by the U.S. Treasury." *Bank of Guam*, 578 F.3d at 1321; *see also id.* ("In effect, the GTIT 'mirrors' the [Internal Revenue Code] by substituting certain terms in the IRC for terms pertinent to Guam, such as replacing 'United States' with 'Guam.'").[4]

SSI benefits are paid from the general revenues that are funded by federal income taxes. Guam residents are therefore exempted from paying the taxes that fund the SSI program. It was rational for Congress to determine not to extend the SSI program to a Territory in which residents generally do not contribute to the funds used to pay for the benefits. *See Gautier Torres*, 435 U.S. at 5 (finding the unique tax status of Puerto Rico was a rational basis for the exclusion of its residents from the SSI program). None of the district court's reasons for rejecting this rationale withstand scrutiny.

The district court concluded that Congress could not rely on the unique tax status of Guam residents because the recipients of SSI benefits generally owe no income taxes

[4] This scheme differs from the manner in which Puerto Rico residents are exempted from the federal income tax. *Compare* 26 U.S.C. § 933 (individuals who reside in Puerto Rico generally owe no federal income tax on income derived from sources in Puerto Rico), *and* 26 U.S.C. §§ 881, 882 (corporations in Puerto Rico generally owe no federal corporate income tax on income connected with Puerto Rico), *with* 48 U.S.C. § 1421i(a), (d), (e) (applying the income tax laws in force in the United States to Guam, but substituting "Guam" for "United States").

because their income levels are too low. ER 14. But under rational-basis review, Congress retains the power to make "rough accommodations." *Dandridge*, 397 U.S. at 485 (quotation marks omitted). It is not irrational for Congress to focus on the tax status of the Territory as a whole, rather than on the tax status of the particular individuals who would receive SSI benefits. And moreover, it is not irrational for Congress, when allocating resources from a finite pool, to draw a line that excludes from the benefits of a social welfare program residents of a Territory that does not generally share the burden of funding the program. Indeed, the district court acknowledged as much, stating that Guam's tax status could "explain why it is treated differently from the fifty States and the District of Columbia." ER 14.

Notwithstanding its recognition of the reasonableness of relying on Guam's unique tax status, the district court believed that this was insufficient to justify Guam's exclusion from the SSI program because Congress separately extended benefits to residents of the CNMI, who also do not pay federal income taxes. ER 14. This, too, was error.

Federal law has long distinguished between and among Territories, in matters small and large. For instance, Congress has enacted legislation ensuring that Puerto Rico is treated like a State for most statutory purposes, *see* 48 U.S.C. § 734, but has not passed analogous legislation for other Territories. And, more specifically, benefits programs routinely distinguish among Territories, including between the CNMI and Guam. *See, e.g.*, 42 U.S.C. §§ 602, 619 (extending Temporary Assistance for Needy Families

program to "States," defined to include Puerto Rico, the U.S. Virgin Islands, Guam, American Samoa, but not the CNMI); 7 U.S.C. § 2014 (stating Guam and the U.S. Virgin Islands, but no other Territories, treated akin to States for purposes of SNAP). And Congress has extended birthright citizenship to individuals born in some Territories, but not to those born in "outlying possessions" (including American Samoa). *See* 8 U.S.C. § 1408 (individuals born in outlying possessions are "nationals … of the United States"); *see also Tuaua v. United States*, 788 F.3d 300 (D.C. Cir. 2015) (holding that Constitution does not require that American Samoans be granted citizenship). Neither the district court nor plaintiff has identified any case suggesting that Congress is constrained to extend federal legislation to the Territories uniformly.

Although, as the district court emphasized, the CNMI is similarly situated to Guam in terms of tax status, its political history provides sufficient reason for Congress to treat it differently than other Territories with regard to the SSI program. As this Court reasoned in *Besinga*, "common characteristic[s] shared by beneficiaries and nonbeneficiaries alike, is not sufficient to invalidate a statute when other characteristics peculiar to only one group rationally explain the statute's different treatment of the two groups." *Besinga*, 14 F.3d at 1362 (quoting *Johnson v. Robison*, 415 U.S. 361, 378 (1974)). The CNMI is the most recent addition to the United States' Territories, and its relationship with the United States is unique in American law. Unlike any other Territory, the CNMI entered the United States voluntarily, and on terms negotiated and set forth in the Covenant, which specified, *inter alia,* which provisions of United States

statutory and constitutional law would and would not apply to the CNMI. *See generally*, Covenant art. V, §§ 501-505, 90 Stat. at 267-69 (1976). Among the statutes specifically listed as applying to the CNMI was "Title XVI of the Social Security Act," also known as the SSI program. *Id.* § 502(a)(1). By contrast, however, the Covenant did not indicate that CNMI residents would be eligible for SNAP benefits, which were extended to residents of Guam in 1970. *See* The Food Stamp Act Amendment of 1970, Pub. L. No. 91-671, 84 Stat. 2048 (1971); 7 U.S.C. § 2014. Extending the SSI program to the CNMI through the Covenant negotiation process did not oblige Congress to also extend such benefits to residents of Guam, especially where Guam residents already receive other benefits that are not available to residents of the CNMI.

The district court's reasoning also runs contrary to the Supreme Court's clear precedent upholding classifications that are 'to some extent both underinclusive and overinclusive' under rational-basis review." *Gallinger v. Becerra*, 898 F.3d 1012, 1018 (9th Cir. 2018) (quoting *Vance v. Bradley*, 440 U.S. 93, 108 (1979)). The Supreme Court's jurisprudence is clear that a "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955); *see also id.* ("The legislature may select one phase of one field and apply a remedy there, neglecting the others. The prohibition of the Equal Protection Clause goes no further than the invidious discrimination." (citation omitted)); *American Fed'n of Labor v. American Sash & Door Co.*, 335 U.S. 538, 541-42 (1949) ("We there pointed out the general rule that 'legislative authority exerted

within its proper field, need not embrace all the evils within its reach.'" (citation omitted) (quoting *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 46 (1937)). Congress may constitutionally extend the SSI program to the fifty States and the District of Columbia and not the Territories, and it may extend the SSI program to the CNMI, without the Constitution necessitating that it also be extended to Guam.[5]

The breadth of the district court's reasoning further counsels against accepting it. The court's theory would require that Congress provide benefits to residents of all Territories once it extended benefits to residents of the CNMI, or of any Territory. This conclusion ignores the *sui generis* nature of the relationship between the United States and each Territory and flies in the face of Congress's long history of managing its relationship with each Territory independently.

#### 2. The Cost of Extending SSI Benefits to Residents Provides a Rational Basis for the Exclusion of Guam Residents.

Because "protecting the fiscal integrity of Government programs, and of the Government as a whole, is a legitimate concern of the State," judicial "review of distinctions that Congress draws in order to make allocations from a finite pool of resources must be deferential, for the discretion about how best to spend money to improve the general welfare is lodged in Congress rather than the courts." *Lyng v.*

---

[5] The inclusion of residents of the CNMI in the SSI program went into effect in January 1978 at the time the CNMI entered its covenant with the United States. *See* Jurisdictional Statement, *Califano v. Gautier Torres*, No. 77-88, 1977 WL 204941 (U.S. July 14, 1977). It was thus in effect when the Supreme Court issued its decisions in both *Gautier Torres* and in *Rosario* and did not factor into the Court's reasoning.

*International Union, United Auto. Aerospace & Agric. Implement Workers of Am., UAW*, 485 U.S. 360, 373 (1988) (quotation marks omitted). Congress has a legitimate interest in limiting government expenditures, and confining SSI to the States and the District of Columbia is a rational means of advancing that interest.

The cost of including Guam residents in the SSI program would be substantial. *See Gautier Torres*, 435 U.S. at 5 n.7 (finding the cost of extending benefits to Puerto Rico residents "would be extremely great"). As the Complaint itself notes, the Government Accountability Office (GAO) issued a 1987 report regarding the potential effect of extending various social and economic welfare programs (including SSI) to several U.S. Territories, including Guam. *See* ER 40 (¶ 22) (citing Gen. Accounting Office, GAO/HRD-87-60, *Welfare and Taxes: Extending Benefits and Taxes to Puerto Rico, Virgin Islands, Guam, and American Samoa* (1987) https://go.usa.gov/xAbtF (GAO/HRD-87-60)). That report estimated that if Guam residents were eligible for SSI benefits, annual federal spending would increase by $7.8 million. *See* GAO/HRD-87-60 at 44. In 2019 dollars, $7.8 million in 1987 dollars would be equivalent to over $17 million. *See CPI Inflation Calculator*, https://data.bls.gov/cgi-bin/cpicalc.pl. This figure also does not take into account that since 1987, Guam's population has increased by approximately 80%. *See* The World Bank, *Population growth (annual %)* (2020), https://data.worldbank.org/indicator/SP.POP.GROW?end=2017&start=1987. In addition, the Guam Legislature estimated in 2013 that as many as 24,000 residents of Guam could be eligible for SSI benefits if Congress were to extend the program to

include Guam residents. Guam Res. 42-32, at 2, 32nd Leg. (2013), www.guamlegislature.com/COR_Res_32nd/Adopted/R042-32%20(LS).pdf. If this estimate is accurate, providing SSI payments at a monthly rate similar to that of residents of the CNMI, would require approximately $175 million in annual spending on SSI benefits for Guam residents. *See* ER 15-16.

Substituting its judgment for that of Congress, the district court rejected this rationale on the ground that the cost of extending benefits to Guam was not sufficiently great, in its view, to justify the exclusion. ER 16. But the Supreme Court has never required costs to meet a certain threshold in order to qualify as sufficiently reasonable to withstand rational-basis review. And the district court provided no explanation for how to draw a line between costs that would be reasonable and those that would not. In *Gautier Torres*, for example, the Supreme Court found that the estimated $300 million cost of extending benefits to Puerto Rico was sufficient to justify its exclusion from the program. 435 U.S. at 5 n.7. The Social Security Administration has estimated that, in addition to the $23 billion it would cost to extend SSI to Puerto Rico over the next ten years, extending the SSI program to the Guam, American Samoa, and the U.S. Virgin Islands would cost a further $700 million. *See* SSA Mem. from Michael Stephens, Supervisory Actuary, to Steve Goss, Chief Actuary, *Estimated Change in Federal SSI Program Cost for Potential Extension of SSI Eligibility to Residents of Certain U.S. Territories* 2 (Jun. 11, 2020), https://go.usa.gov/xA2yM (Stephens Memo). Notably, Guam is more populous than either American Samoa or the U.S. Virgin Islands. *See* U.S. Census

Bureau, 2*010 Census Population and Housing Tables (CPH-Ts): Population, Housing Units, Land Area, and Density for U.S. Island Areas: 2010 (CPH-T-8)* (Oct. 28, 2013), https://go.usa.gov/xAbtS. Assuming it is proper for a court to consider whether cost savings are sufficiently significant under rational-basis review, the amounts of money at issue would plainly meet any relevant threshold, and thus could have rationally justified Congress's decision to exclude residents of Guam and other Territories from the SSI program.

#### 3. Congress Could Rationally Exclude Residents of Guam from the SSI Program Based on Concerns About the Economic Impact of Extending Benefits.

Congress could have rationally concluded that extending SSI benefits eligibility to Guam residents could "disrupt [its] economy." *Gautier Torres*, 435 U.S. at 5 n.7. Specifically, Congress could have rationally concluded that an increase in Guam's money supply resulting from the influx of SSI benefits could have resulted in "appreciable inflationary pressure." *Besinga*, 14 F.3d at 1362. Indeed, the Supreme Court in *Gautier Torres* deemed it rational to conclude that the extension of SSI benefits to Puerto Rico might create such inflationary pressure, 435 U.S. at 5 n.7, and in *Rosario*, the Court explained that it was rational to conclude that "greater benefits" "could disrupt the Puerto Rican economy," 446 U.S. at 652. Similarly, Congress could reasonably have thought that the influx of SSI payments would have a negative impact on the economy of Guam by contributing to inflation. The rationality of Congress's judgment is underscored by the work of certain labor economists supporting the theory

that benefit programs can "depress work effort" by "discourag[ing] employment" and "slow[ing] the accumulation of work experience and skill." Gary Burtless & Orlando Sotomayor, *Labor Supply and Public Transfers*, *in The Economy of Puerto Rico: Restoring Growth* 82, 131 (Susan M. Collins et al. eds., 2006). Congress could also have rationally concluded that such negative effects would be expected to have a significant impact in Guam not only because of the high poverty levels, but also because Guam residents will not generally bear the burden of tax increases to fund the benefits programs. *Id.* at 82, 96-97.

The district court rejected this rationale on the ground that even if the rationale was valid when the Supreme Court decided *Gautier Torres* and *Rosario*, present day circumstances demonstrate that potential economic disruption is no longer a rational basis for the statutory exclusion. The court pointed to the fact that residents of Guam have received some federal benefits—namely SNAP and Medicaid assistance—and that residents of the CNMI have received SSI benefits with, in the court's analysis, no detrimental economic impact. Under rational-basis review, however, the question is whether "there is any reasonably conceivable state of facts that could provide a rational basis for the classification"—not whether the classification is wise in light of current economic conditions. *Beach Commc'ns*, 508 U.S. at 313. As this Court has explained, "the inquiry is not whether the challenged action *actually* furthered a legitimate interest," but rather, "it is enough that the governing body *could have rationally decided* that the action

would further that interest." *Crawford v. Antonio B. Won Pat Int'l Airport Auth.*, 917 F.3d 1081, 1095 (9th Cir. 2019) (alteration and quotation marks omitted).

Even accepting that the CNMI's experience as part of the SSI program is relevant, Congress could still rationally have concluded that the impact on the economy of the CNMI would differ from that in Guam. For example, according to 2010 U.S. Census data, the estimated total population of Guam is 159,358, while the estimated total population of the CNMI is 53,883. U.S. Census Bureau, *supra* pp. 23-24. Congress could have rationally concluded that because of the relatively smaller population of the CNMI, an extension of the SSI program to its residents would be "unlikely to lead to any appreciable inflationary pressure on the [CNMI's] economy." *Besinga*, 14 F.3d at 1362.

Equally misplaced is the district court's reliance on *Burlington Northern Railroad Co. v. Department of Public Service Regulation*, 763 F.2d 1106, 1110 (9th Cir. 1985), for the proposition that its "constitutional review of the SSI program may take into account present day circumstances," ER 18. In *Burlington Northern*, this Court recognized that "[i]n construing statutory language, a court must ordinarily consider the circumstances at the time of passage, rather than later interpretations or statements of purpose." 763 F.2d at 1111 n.3. Noting that the Supreme Court has been "ambivalent" on the issue of "whether changed circumstances can transform a once-rational statute into an irrational law," this Court further observed that the Supreme Court has stated that the "constitutionality of a statute may be attacked on the basis that the facts upon which it

is premised have ceased to exist." *Id.* at 1111 (citing *Leary v. United States*, 395 U.S. 6, 38 n. 68 (1969)); *see also Chastleton Corp. v. Sinclair*, 264 U.S. 543, 547-48 (1924) ("A law depending upon the existence of an emergency or other certain state of facts to uphold it may cease to operate if the emergency ceases or the facts change even though valid when passed."). But, as this Court observed, "[w]here courts have invalidated archaic statutes, there is often an independent constitutional basis for so doing (i.e., a belated recognition that the statutes were unconstitutional as written)." *Burlington Northern*, 763 F.2d at 1111 n.3.

Whatever "ambivalen[ce]" may attend the question when, in the abstract, it is appropriate to consider present-day circumstances, *Burlington Northern*, 763 F.2d at 1111, no such concern is presented here. Plaintiff raises an equal protection challenge to a limitation on the scope of federal benefits legislation. The Supreme Court has long held that when a "classification in [an economic regulation] is called in question," a court must look to any conceivable state of facts, and not demand empirical proof of Congress's rationale. *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 (1911); *see also Roley v. Pierce Cty. Fire Prot. Dist. No. 4*, 869 F.2d 491, 493 (9th Cir. 1989) (noting this Court considers "any hypothetical basis on which [Congress] might have acted."). The district court's understanding of *Burlington Northern* would upend entirely the Supreme Court's rational-basis review of economic legislation and replace it with a searching factual inquiry into whether the current state of affairs in fact supports the legislation.

As demonstrated, the district court's searching review violates general principles of rational-basis review; it is also contrary to decisions addressing similar challenges brought by residents of the Territories. Employing the appropriate mode of analysis under rational-basis review, this Court in *Besinga* considered "dispositive" that the extension of benefits to certain individuals who had served in the Philippine Commonwealth Army in World War II might have contributed to inflationary pressure; it did not conduct any empirical inquiry into whether the benefits that had been extended to the Old Philippine Scouts had a positive, neutral, or detrimental impact on the Philippine economy. 14 F.3d at 1362. And in *Gautier Torres* and *Rosario*, the Supreme Court did not consider whether the previous extension of certain federal benefits to other Territories, such as Guam, or to other populations with high poverty levels had the expected economic impact the Court discussed. *See Gautier Torres*, 435 U.S. at 5 n.7; *Rosario*, 446 U.S. at 652.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

JEFFREY BOSSERT CLARK
*Acting Assistant Attorney General*

SHAWN N. ANDERSON
*United States Attorney*

ABBY C. WRIGHT
*s/ Laura E. Myron*
LAURA E. MYRON
*Attorneys, Appellate Staff*
*Civil Division, Room 7228*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4819*
*Laura.e.myron@usdoj.gov*

December 2020

## CERTIFICATION OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,413 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Laura E. Myron*
LAURA E. MYRON

## CERTIFICATION OF SERVICE

On December 28, 2020, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Laura E. Myron*
LAURA E. MYRON